**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

KAYLA HARRIS AND STEPHANIE BRAULICK,

*individually, and on behalf of those similarly situated*,

Plaintiff,

v.

GILLETTE CHILDREN'S SPECIALTY HEALTHCARE,

*a Minnesota nonprofit corporation*,

Defendant.

Case No. 24-cv-01687 (KMM/JFD)

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

---

# TABLE OF CONTENTS

Page


TABLE OF AUTHORITIES .......... iii

BACKGROUND .......... 1

I. THE PARTIES. .......... 1

II. GILLETTE'S WEBSITE. .......... 1

III. GILLETTE'S POLICIES. .......... 2

LEGAL STANDARD .......... 4

ARGUMENT .......... 5

I. PLAINTIFFS LACK STANDING BECAUSE THEY ARE NOT PATIENTS AND THEY DO NOT ALLEGE THEIR INFORMATION WAS SHARED. .......... 5

II. THE HHS GUIDANCE ON WHICH PLAINTIFFS RELY HAS BEEN VACATED. .......... 6

III. THE COMPLAINT VIOLATES RULE 8. .......... 7

IV. PLAINTIFFS' CLAIMS FAIL FOR ADDITIONAL INDEPENDENT REASONS. .......... 10

- A. Plaintiffs Fail to State an ECPA Claim (Count I). .......... 10
  - 1. Plaintiffs fail to allege an unlawful "interception" of "contents" under the ECPA. .......... 10
  - 2. The Complaint fails to plausibly allege that the crime-tort exception applies. .......... 12
    - a. Plaintiffs do not allege a tortious or criminal *purpose*. .......... 13
    - b. Plaintiffs do not allege an *independent* tort or crime. .......... 15
    - c. Plaintiffs do not allege a *contemporaneous* tortious or criminal purpose. .......... 16
    - d. Plaintiffs do not allege Gillette intended to harm them personally with any supposed crime or tort. .......... 16
  - 3. Plaintiffs fail to state a claim for "procurement" or "use." .......... 17
- B. Plaintiffs Fail to State an Invasion of Privacy Claim (Count II). .......... 18
- C. Plaintiffs Fail to State a Negligence Claim (Count III). .......... 20
  - 1. Plaintiffs fail to allege Gillette owed a duty to them. .......... 20
  - 2. Plaintiffs do not allege Gillette breached a duty to them. .......... 20

3. Plaintiffs do not allege they sustained an injury. .......... 21
D. Plaintiffs Fail to State a Breach of Implied Contract Claim (Count IV). .......... 21
E. Plaintiffs Fail to State an Unjust Enrichment Claim (Count V). .......... 23
F. Plaintiffs Fail to State an MUDTPA Claim (Count VI). .......... 25
1. Plaintiffs fail to plausibly allege deceptive statements. .......... 25
2. Plaintiffs fail to allege a causal nexus. .......... 26
3. Plaintiffs fail to allege that they are likely to suffer future harm. .......... 27
4. Because Gillette has disabled tracking technologies on its website, Plaintiffs' MUDTPA claim is moot. .......... 28

CONCLUSION .......... 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Hosp. Ass'n v. Becerra*,
2024 WL 3075865 (N.D. Tex. June 20, 2024) .......... 6

*Amann v. Allianz Income Mgmt. Servs., Inc.*,
No. A09-1891, 2010 WL 3220061 (Minn. Ct. App. Aug. 17, 2010) .......... 23, 24

*Ark. Blue Cross & Blue Shield v. Little Rock Cardiology Clinic, P.A.*,
551 F.3d 812 (8th Cir. 2009) .......... 4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 5, 24

*Azarax, Inc. v. Syverson*,
398 F. Supp. 3d 425 (D. Minn. 2019) .......... 22

*Baker v. Seattle Children's Hosp.*,
Case No. 23-2-19331, Dkt. No. 21 (Wash. Sup. Ct. Feb. 23, 2024) .......... 5

*Barclay v. Icon Health & Fitness, Inc.*,
No. 19-2970, 2022 WL 486999 (D. Minn. Feb. 17, 2022) .......... 27, 28

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 4, 5, 7

*Branson Label, Inc. v. City of Branson*,
793 F.3d 910 (8th Cir. 2015) .......... 4

*C.L.D. v. Wal-Mart Stores, Inc.*,
79 F. Supp. 2d 1080 (D. Minn. 1999) .......... 18

*Caldas v. Affordable Granite & Stone, Inc.*,
820 N.W.2d 826 (Minn. 2012) .......... 23, 25

*Capitol Recs. Inc. v. Thomas-Rasset*,
No. 06-1497, 2009 WL 1664468 (D. Minn. June 11, 2009) .......... 11

*Carlsen v. GameStop, Inc.*,
833 F.3d 903 (8th Cir. 2016) .......... 4

*Caro v. Weintraub*,
No. 09-00335, 2009 WL 2358919 (D. Conn. July 31, 2009), *aff'd*, 618 F.3d 94 (2d Cir. 2010)....................*passim*

*Chadbourne v. Walmart*,
No. 19-1240, 2019 WL 4195269 (D. Minn. Aug. 8, 2019)....................8

*Chey v. Metro. Airports Comm'n*,
No. 22-1429, 2023 WL 2308272 (D. Minn. Mar. 1, 2023)....................21

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983)....................27

*DeShane v. City of Minneapolis*,
No. 21-1452, 2022 WL 624579 (D. Minn. Mar. 3, 2022)....................21

*Doe 169 v. Brandon*,
845 N.W.2d 174 (Minn. 2014)....................20

*Doe v. Kaiser Found. Health Plan, Inc.*,
No. 23-CV-02865, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024)....................14

*In re DoubleClick Inc. Priv. Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001)....................12, 13, 14

*E-Shops Corp. v. U.S. Bank Nat. Ass'n*,
678 F.3d 659 (8th Cir. 2012)....................25

*In re Facebook Internet Tracking Litig.*,
140 F. Supp. 3d 922 (N.D. Cal. 2015)....................22

*Fairview Health Servs. v. Armed Forces Off. of Royal Embassy of Saudi Arabia*,
No. 21-2666, 2023 WL 8481554 (D. Minn. Dec. 7, 2023)....................21

*Forsyth v. Barr*,
19 F.3d 1527 (5th Cir. 1994)....................17

*Glick v. W. Power Sports, Inc.*,
944 F.3d 714 (8th Cir. 2019)....................5

*Glorvigen v. Cirrus Design Corp.*,
816 N.W.2d 572 (Minn. 2012)....................21

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015)....................11

*Grp. Health Plan, Inc. v. Philip Morris Inc.*,
621 N.W.2d 2 (Minn. 2001)........................................................................26

*In re Grp. Health Plan Litig.*,
No. 23-267, 2023 WL 8850243 (D. Minn. Dec. 21, 2023) ..................................*passim*

*Gurman v. Metro Hous. & Redevelopment Auth.*,
842 F. Supp. 2d 1151 (D. Minn. 2011)........................................................8, 9

*Hall v. Centerspace, LP*,
No. 22-2028, 2023 WL 3435100 (D. Minn. May 12, 2023) ...............................23, 24

*Hammerling v. Google*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ..........................................................19

*Hari v. Smith*,
No. 20-1455, 2022 WL 1122940 (D. Minn. Jan. 31, 2022) ...................................17

*Hartley v. Univ. of Chicago Med. Ctr.*,
No. 22-5891, 2023 WL 7386060 (N.D. Ill. Nov. 8, 2023) .......................................7

*Hillerich & Bradsby Co. v. Christian Bros.*,
943 F. Supp. 1136 (D. Minn. 1996).................................................................28

*Holderfield v. Thyssenkrupp Elevator Corp.*,
No. 20-1599, 2022 WL 980638 (E.D. Va. Mar. 30, 2022)..........................................8

*Jurgens v. Build.com, Inc.*,
No. 17-00783, 2017 WL 5277679 (E.D. Mo. Nov. 13, 2017)....................................10

*Katz-Lacabe v. Oracle Am., Inc.*,
No. 22-04792, 2023 WL 2838118 (N.D. Cal. Apr. 6, 2023).....................................14

*Khan v. Children's Nat'l Health Sys.*,
188 F. Supp. 3d 524 (D. Md. 2016)..................................................................22

*Kurowski v. Rush Sys. for Health*,
683 F. Supp. 3d 836 (N.D. Ill. 2023) ...........................................................6, 29

*Lehman v. Zumbrota-Mazeppa Pub. Sch.*,
No. A04-1226, 2005 WL 894756 (Minn. Ct. App. Apr. 19, 2005).............................18

*Luckey v. Alside, Inc.*,
245 F. Supp. 3d 1080 (D. Minn. 2017)..............................................................26

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .................... 6, 27, 28

*Mekhail v. N. Mem'l Health Care*,
No. 23-440, 2024 WL 1332260 (D. Minn. Mar. 28, 2024) .................... *passim*

*Meredith v. Gavin*,
446 F.2d 794 (8th Cir. 1971) .................... 13, 16

*Mitchell v. Kurkowski*,
No. 22-490, 2022 WL 17176888 (D. Minn. Nov. 23, 2022) .................... 10

*Nelson Auto Ctr., Inc. v. Multimedia Holdings Corp.*,
951 F.3d 952 (8th Cir. 2020) .................... 1, 28

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016) .................... 15

*Nienaber v. Overlake Hosp. Med. Ctr.*,
No. 2:23-CV-01159-TL, 2024 WL 2133709 (W.D. Wash. May 13, 2024) .................... 5

*Okash v. Essentia Health*,
No. 23-482, 2024 WL 1285779 (D. Minn. Mar. 26, 2024) .................... *passim*

*Olen v. N. Tier Retail, LLC*,
No. 11-2665, 2012 WL 1580994 (D. Minn. May 4, 2012) .................... 27

*Peavy v. WFAA-TV, Inc.*,
221 F.3d 158 (5th Cir. 2000) .................... 17

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022) .................... 15

*Rasmusson v. Chisago Cnty.*,
991 F. Supp. 2d 1065 (D. Minn. 2014) .................... 18

*Song v. Champion Petfoods USA, Inc.*,
No. 18-CV-3205, 2020 WL 7624861 (D. Minn. Dec. 22, 2020), *aff'd*, 27 F.4th 1339 (8th Cir. 2022) .................... 25

*State v. Minnesota Sch. of Bus., Inc.*,
935 N.W.2d 124 (Minn. 2019) .................... 28

*Stewart v. City of Oklahoma City*,
47 F.4th 1125 (10th Cir. 2022) .................... 16

*Sussman v. Am. Broad. Companies, Inc.*,
186 F.3d 1200 (9th Cir. 1999) .......... 13

*Tatone v. SunTrust Mortg., Inc.*,
857 F. Supp. 2d 821 (D. Minn. 2012) .......... 10

*Thompson v. Dulaney*,
970 F.2d 744 (10th Cir. 1992) .......... 17

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021) .......... 27

*Tri-State Bobcat, Inc. v. FINN Corp.*,
338 F. Supp. 3d 971 (D. Minn. 2018) .......... 22

*United States v. Jiau*,
734 F.3d 147 (2d Cir. 2013) .......... 13, 16

*United States v. Phillips*,
540 F.2d 319 (8th Cir. 1976) .......... 15

*WinRed, Inc v. Ellison*,
581 F. Supp. 3d 1152 (D. Minn. 2022), *aff'd*, 59 F.4th 934 (8th Cir. 2023) .......... 28

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) .......... 11, 12

**Statutes**

15 U.S.C. § 44 .......... 7

18 U.S.C. § 2510(4) .......... 10

18 U.S.C. §§ 2510(4), (8) .......... 11

18 U.S.C. § 2510(8) .......... 11

18 U.S.C. § 2511(1) .......... 10

18 U.S.C. § 2511(1)(a)–(d) .......... 10

18 U.S.C. § 2511(1)(c)–(d) .......... 17

18 U.S.C. § 2511(2)(d) .......... 11, 12, 13, 16

Minn. Stat. § 144.291, subd. 2(c) .................... 20

Minn. Stat. §§ 144.293, 144.651, subd. 15–16.................... 20

Minn. Stat. § 325D.44, subds. 1(5), (7).................... 25

Minn. Stat. § 325D.45 .................... 27

Minn. Stat. § 325D.45, subd. 1 .................... 25, 27

**Other Authorities**

45 C.F.R. § 160.103.................... 9

*Covered Entities and Business Associates*, Dep't of Health & Hum. Servs., https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html.................... 7

Fed. R. Civ. P. 8(a)(2) .................... 7

*Introducing Meta: A Social Technology Company*, Meta Platforms, Inc. (Oct. 28, 2021), https://about.fb.com/news/2021/10 /facebook-company-is-now-met .................... 2

Rule 8.................... 7, 9

Rule 9(b)'s .................... 25

Rule 11.................... 8, 9

Rule 12.................... 26

Rule 12(b)(1) .................... 4

Rule 12(b)(6) .................... 4

## BACKGROUND

### I. THE PARTIES.

Defendant Gillette Children's Specialty Healthcare ("Gillette") is a Minnesota nonprofit health care system serving children across Minnesota. (*See* Doc. 1 ¶¶ 2, 16.)

Plaintiffs Kayla Harris and Stephanie Braulick (collectively "Plaintiffs") allege their children are Gillette patients. (*Id.* ¶¶ 80, 95.) They claim to have used both Gillette's website and patient portal to research health conditions, search for doctors, schedule appointments, and conduct other activities for their children. (*Id.* ¶¶ 80, 82, 95, 97.) Plaintiffs allege having Instagram, Facebook, and/or Google accounts. (*Id.* ¶¶ 79, 94.)

Plaintiffs do not allege that they are Gillette patients, or that they used Gillette's website in connection with their health information.

### II. GILLETTE'S WEBSITE.

Gillette maintained the website www.gillettechildrens.org. (*Id.* ¶ 2.) This website is publicly accessible by anyone with internet access. (*See id.* ¶ 80); *see also* https://www.gillettechildrens.org.[1] Gillette also maintains a separate patient portal that can only be accessed by those with an account. (*See* Doc. 1 ¶ 78); *see also* https://mygillette.iqhealth.com.

[1] The Court may consider facts related to the website for this Motion to Dismiss because the Complaint necessarily embraces Gillette's website. *See Nelson Auto Ctr., Inc. v. Multimedia Holdings Corp.*, 951 F.3d 952, 955–56 (8th Cir. 2020) (considering a defendant's website on a motion to dismiss as it was necessarily embraced by the complaint).

The Complaint alleges that Gillette installed tracking technologies on its public website, gillettechildrens.org. (Doc. 1 ¶¶ 1, 3, 7; *see also id.* ¶ 2.) The Complaint alleges Gillette installed Meta Pixel ("Pixel"), which allegedly transmitted public website visitors' activities to Meta.[2] (*Id.* ¶¶ 3–4.) The Complaint also alleges that Gillette installed "Google tracking code," which allegedly disclosed information to Google. (*Id.* ¶¶ 10, 62–64.)

The Complaint alleges that information Plaintiffs provided on its publicly accessible website—not the patient portal—was shared with third parties. (*See id.* at ¶ 2 (defining the "website" as www.gillettechildrens.org); ¶¶ 3–4, 9, 28–29, 43–44, 52, 58–59, 65–73, 81–83, 96–98 (alleging tracking technologies on the public website); ¶¶ 78, 80, 95 (no allegations of information sharing in portal).)

## III. GILLETTE'S POLICIES.

Plaintiffs allege the website include "Legal Notices." (*Id.* ¶ 107.) The "Legal Notices" is displayed on Gillette's website with a pink banner ("Cookie Banner") that reads:

> ***We use cookies to improve your experience. By using our site, you agree to this***. Legal Notices

The phrase "Legal Notices" linked to a new page providing these notices. (*See* Decl. of Nicole Moen, Exs. A ("Cookie Banner") (emphasis added), B ("Legal Notices").)

The Legal Notices state that the website is educational only and is not medical care. (Legal Notices at 1.)

---

[2] Facebook and Instagram are part of Meta. *Introducing Meta: A Social Technology Company*, Meta Platforms, Inc. (Oct. 28, 2021), https://about.fb.com/news/2021/10/facebook-company-is-now-meta.

The Legal Notices explain that the website might use "cookies or other technologies." (*Id.* at 3.) With regard to cookies, the Legal Notices stated:

- "third parties, such as advertising agencies, might also set and access cookies or other technologies on a visitor's computer when they use the site;"
- "We may permit third party companies the use of cookie data to display tailored ads on sites across the Internet based on what parts of the gillettechildrens.org website visitors have viewed;"
- "These cookies and similar items can be disabled by adjusting browser preferences at any time;" and
- "By using our website, you agree to these terms."

(*Id.*)

The Legal Notices further explained that the website might use web beacons and pixels. (*Id.*)

The Legal Notices explicitly discussed Gillette's use of Google Analytics. (*Id.* at 4.) Specifically, they noted that:

- "We use Google Analytics, a web analytics service provided by Google, Inc. ('Google') to collect certain information relating to your use of our Sites;"
- "Google Analytics uses cookies, which are text files placed on your computer, to help our Sites analyze how users use the Sites;" and

- "We may also use Google Analytics Advertising Features or other advertising networks to provide you with interest-based advertising based on your online activity."

(*Id.*) The Notices also specifically linked to Google's websites where website users could learn more about how Google uses data it gathers from websites, Google Analytics, and how Google uses information to advertise. (*Id.*)

The Notices also provided an easy way for users to ask specific questions about Gillette's policies. (*Id.* at 5; Decl. of Nicole Moen ¶ 4.)

**LEGAL STANDARD**

Plaintiffs bear "[t]he burden of establishing that [their] cause of action lies within the limited jurisdiction of the federal courts." *Ark. Blue Cross & Blue Shield v. Little Rock Cardiology Clinic, P.A.*, 551 F.3d 812, 816 (8th Cir. 2009). "A court deciding a motion under Rule 12(b)(1) must distinguish between a 'facial attack' and a 'factual attack . . . .'" *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) (citation omitted). In examining whether this Court has subject-matter jurisdiction over Plaintiffs' claims, the Court must afford Plaintiffs "the same protections as [they] would [receive] defending against a motion brought under Rule 12(b)(6)." *Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 914 (8th Cir. 2015) (citation omitted).

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While a complaint "does not need detailed factual allegations," it must contain enough specific facts "to raise a right to relief above

the speculative level." *Id.* at 555. Thus, a complaint needs "more than labels and conclusions." *Id.*; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). While the Court accepts as true the Complaint's factual allegations and draws reasonable inferences in the light most favorable to the plaintiff, the Court "need not accept as true a plaintiff's conclusory allegations or legal conclusions drawn from the facts." *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019).

## ARGUMENT

### I. PLAINTIFFS LACK STANDING BECAUSE THEY ARE NOT PATIENTS AND THEY DO NOT ALLEGE THEIR INFORMATION WAS SHARED.

Numerous cases have been filed against health care providers asserting claims related to tracking technologies on websites.[3] This case, however, presents a different situation: whether Plaintiffs, who are not patients and do not allege their information was shared, can bring claims related to their children, who are not parties to this case (Plaintiffs filed the Complaint in their names—not in their children's names).[4]

In *Baker v. Seattle Children's Hosp.*, Case No. 23-2-19331, Dkt. No. 21 (Wash. Sup. Ct. Feb. 23, 2024), another pixel case, the plaintiffs were not patients, and they asserted claims related to their children, who were not parties to the case. (Decl. of Nicole

[3] *See Nienaber v. Overlake Hosp. Med. Ctr.*, No. 2:23-CV-01159-TL, 2024 WL 2133709 (W.D. Wash. May 13, 2024) (dismissing complaint in its entirety).

[4] The District of Minnesota pixel cases that addressed motions to dismiss involved plaintiffs who were patients. *See Mekhail v. N. Mem'l Health Care*, No. 23-440, 2024 WL 1332260, at *1 (D. Minn. Mar. 28, 2024); *Okash v. Essentia Health*, No. 23-482, 2024 WL 1285779, at *1 (D. Minn. Mar. 26, 2024); *In re Grp. Health Plan Litig.*, No. 23-267, 2023 WL 8850243, at *1 (D. Minn. Dec. 21, 2023).

Moen, Ex. C (complaint) (asserting claims under the Washington Privacy Act, Washington Consumer Protection Act, Washington Uniform Health Care Information Act, invasion of privacy, breach of implied contract, and conversion).) The court dismissed the complaint with prejudice. (Decl. of Nicole Moen, Ex. D.)

Plaintiffs do not allege that they were Gillette patients or that their information was shared. Plaintiffs allege that their children are patients and their information was shared, but the children are not parties to this lawsuit—Plaintiffs filed the Complaint in their names—not their children's. Because Plaintiffs were not patients and their information was not shared, Plaintiffs lack standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (noting that a plaintiff with standing must have suffered a concrete injury in fact and that the party invoking the court's federal jurisdiction bears the burden of establishing standing).

## II. THE HHS GUIDANCE ON WHICH PLAINTIFFS RELY HAS BEEN VACATED.

Plaintiffs' Complaint relies on guidance ("Guidance") issued by the Department of Health and Human Services ("HHS") to support their claims. (*See, e.g.*, Doc. 1 ¶¶ 24, 26, 140–49.) In June 2024, the Guidance was vacated for the purposes relevant here. *See Am. Hosp. Ass'n v. Becerra*, 2024 WL 3075865, at *17 (N.D. Tex. June 20, 2024). The court held that a website visit is at most "indicative" of health information, which is beyond the definition of individually identifiable health information. *Id.* The court also held that the Guidance was improper because one cannot identify a person's subjective intent for visiting a website based on the information collected. *Id.* at *13–14; *see also Kurowski v.*

*Rush Sys. for Health*, 683 F. Supp. 3d 836, 844 (N.D. Ill. 2023) ("The interpretation of IIHI offered by HHS in its [original] guidance goes well beyond the meaning of what the statute can bear."); *Hartley v. Univ. of Chicago Med. Ctr.*, No. 22-5891, 2023 WL 7386060, at *2 (N.D. Ill. Nov. 8, 2023).

Even if the Guidance had not been vacated, it still would not have helped Plaintiffs, because the Guidance covered people searching for their own health issues—not for other people's health issues. *See Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates*, Dep't of Health & Hum. Servs., https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html.

## III. THE COMPLAINT VIOLATES RULE 8.

Complaints must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (omission in original, citation omitted).

The Complaint does not contain a "short and plain statement" and fails to put Gillette on sufficient notice of its claims. The Complaint contains 237 paragraphs. Numerous allegations appear to be irrelevant to Gillette and Plaintiffs. (*E.g.*, Doc. 1 ¶¶ 6–7 (allegations about patients' interactions with a website and patient data, but Plaintiffs are not patients), ¶ 8 (quoting a case against Google related to tools Plaintiffs never alleges Gillette used), ¶¶ 21–23 (discussing Federal Trade Commission ("FTC") enforcement, but the FTC's enforcement powers do not apply to non-profits such as Gillette, *see* 15 U.S.C.

§ 44), ¶¶ 30–32 (discussing actions of a non-party), ¶¶ 65–73 (discussing hypothetical examples).) Others are ambiguous. (*E.g.*, *id.* ¶ 1 (creating ambiguous defined terms).)

Sometimes Plaintiffs change the terms, creating further complications and ambiguity. (*E.g.*, *id.* ¶ 46 ("PII and other non-public medical information" as opposed to "Personal Information" as most commonly used throughout the Complaint).)

Similarly, Plaintiffs use different language without identifying these differences as alternative theories, leaving Gillette guessing at Plaintiffs' theory. (*E.g.*, *id.* ¶¶ 47–48.) Other allegations are unnecessarily long and complicated. (*E.g.*, *id.* ¶¶ 42–46.)

The Complaint uses broadly defined terms that lump allegations together, which "unfairly burden[s]" Gillette and the Court, by requiring them to guess at the complained-of conduct. *See Gurman v. Metro Hous. & Redevelopment Auth.*, 842 F. Supp. 2d 1151, 1153 (D. Minn. 2011) ("This is emphatically not the job of either a defendant or the Court."); *Holderfield v. Thyssenkrupp Elevator Corp.*, No. 20-1599, 2022 WL 980638, at *11 & n.4 (E.D. Va. Mar. 30, 2022) (dismissing complaint and noting that the use of broad terms including "and/or" "adds to the difficulty of . . . construing the allegations and any legal basis for Plaintiff's claims"); *Chadbourne v. Walmart*, No. 19-1240, 2019 WL 4195269, at *2 (D. Minn. Aug. 8, 2019) (recommending dismissal where the complaint uses vague allegations), *R.&R. adopted*, 2019 WL 4195954 (D. Minn. Sept. 4, 2019).

These broad terms allow Plaintiffs to evade their Rule 11 obligations. *See Gurman*, 842 F. Supp. 2d at 1153. Broad terms may include conduct the Court finds permissible and conduct it finds actionable. Plaintiffs may only have a good faith basis for alleging the permissible conduct. But by using a broad term, Plaintiffs can avoid their Rule 11

obligations and suggest that Gillette engaged in actionable conduct, despite knowing Gillette did not engage in such conduct, or at least having no good faith basis to allege that Gillette engaged in actionable conduct.

Plaintiffs' defined term "Personal Information" illustrates this problem. Plaintiffs define "Personal Information" to include both "Personal Health Information ('PHI') and Personally Identifiable Information ('PII')." (Doc. 1 ¶ 1.) Plaintiffs then repeatedly use the term "Personal Information" without additional specifics. (*Id.*) Plaintiffs incorrectly imply that laws protect "Personal Information" (as defined by Plaintiffs) when they do not. (*See, e.g.*, ¶ 201.) This definition is even more problematic and misleading because "PHI" is a term commonly used by health care providers like Gillette and regulators to refer to "***protected*** health information" as defined by 45 C.F.R. § 160.103. Plaintiffs, however, define "PHI" and therefore "Personal Information" as "***personal*** health information." (Doc. 1 ¶ 1.) By using this broad term, Plaintiffs can hope the Court will make factual inferences about the information they have no good faith basis to allege.

Similarly, Plaintiffs define "Tracking Tools" as "third-party tracking technologies." (Doc. 1 ¶ 1.) There are countless "third-party tracking technologies." The Complaint repeatedly uses the term "Tracking Tools" without any additional specifics. (*Id.* ¶¶ 1–2, 7, 9, 27, 75, 80, 142, 175–77, 180, 183, 193–94, 203, 206, 231.)

Rule 8, *Twombly*/*Iqbal*, and basic principles of fairness do not permit an approach to pleading that lumps allegations together because it does not give defendants fair notice of what they allegedly did. *See Gurman*, 842 F. Supp. 2d at 1153 ("It is the plaintiffs' burden, under both Rule 8 and Rule 11, to reasonably investigate their claims, to research

the relevant law, to plead only viable claims, and to plead those claims concisely and clearly, so that a defendant can readily respond to them and a court can readily resolve them."); *see also Mitchell v. Kurkowski*, No. 22-490, 2022 WL 17176888, at *7 (D. Minn. Nov. 23, 2022) (dismissing claims in part because they lump allegations against defendants together); *Tatone v. SunTrust Mortg., Inc.*, 857 F. Supp. 2d 821, 831–32 (D. Minn. 2012) (same and collecting cases). The Court should dismiss the Complaint.

## IV. PLAINTIFFS' CLAIMS FAIL FOR ADDITIONAL INDEPENDENT REASONS.

### A. Plaintiffs Fail to State an ECPA Claim (Count I).

Plaintiffs allege that Gillette unlawfully intercepted, disclosed, and used their electronic communications in violation of § 2511(1) the Electronic Communications Privacy Act (the "ECPA" or "Wiretap Act"). *See* 18 U.S.C. § 2511(1)(a)–(d); (Doc. 1 ¶¶ 164–85.) Plaintiffs fail to state an ECPA claim because Gillette was a party to Plaintiffs' alleged communications, and therefore did not unlawfully intercept those communications. Plaintiffs also fail to allege any facts that would support application of the crime-tort exception.

#### 1. Plaintiffs fail to allege an unlawful "interception" of "contents" under the ECPA.

To state a claim under the ECPA, Plaintiffs must allege that Gillette engaged in an interception. *See* 18 U.S.C. § 2511(1); *Jurgens v. Build.com, Inc.*, No. 17-00783, 2017 WL 5277679, at *4 (E.D. Mo. Nov. 13, 2017). Under the ECPA, an "interception" is the "aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4).

Under the ECPA, a "party to a communication" cannot unlawfully intercept that same communication (the "party exception"). *See* 18 U.S.C. § 2511(2)(d); *Capitol Recs. Inc. v. Thomas-Rasset*, No. 06-1497, 2009 WL 1664468, at *3–4 (D. Minn. June 11, 2009); *Mekhail*, 2024 WL 1332260, at *4.

Where the alleged interceptor is the "intended recipient of a communication [it] is necessarily one of its parties" and cannot be held liable under the ECPA. *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 142–43, 153 (3d Cir. 2015); *see also Okash*, 2024 WL 1285779, at *3 (applying the party exception because the defendant was the intended recipient even if the "intended recipient . . . duplicates and forwards the communication to a third party"); *In re Grp. Health Plan Litig.*, 2023 WL 8850243, at *7 (holding that the intended recipient is a party to the communications) *Caro v. Weintraub*, No. 09-00335, 2009 WL 2358919, at *3–4 (D. Conn. July 31, 2009), *aff'd*, 618 F.3d 94 (2d Cir. 2010).

As Plaintiffs allege, Gillette was the intended recipient of Plaintiffs' communications. The ECPA explicitly excludes liability under these circumstances. *See* 18 U.S.C. § 2511(2)(d). As party to any allegedly intercepted communications, Gillette cannot be held liable under the ECPA. *See Kurowski I*, 2023 WL 2349606, at *4; *Okash*, 2024 WL 1285779, at *3–4.

Additionally, Plaintiffs' ECPA claim should be dismissed because Plaintiffs failed to allege that Gillette intercepted or disclosed the "contents" of their communications. *See* 18 U.S.C. §§ 2510(4), (8). The "contents" of a communication refers to the "substance" of the communication. *See* 18 U.S.C. § 2510(8). In *In re Zynga Priv. Litig.*, 750 F.3d 1098,

1106–08 (9th Cir. 2014), the court held that "content" under the ECPA "refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message." The *Zynga* court also held that information such as names, Facebook IDs, and webpage addresses did not constitute "contents" under the ECPA. *Id.* Here, because Plaintiffs allege that "record information" such as identification and address information were disclosed, that information does not qualify as ECPA "contents." *But see Mekhail*, 2024 WL 1332260, at *3 (rejecting a similar argument); *In re Grp. Health Plan Litig.*, 2023 WL 8850243, at *7 (same).

**2. The Complaint fails to plausibly allege that the crime-tort exception applies.**

To avoid dismissal of this claim, the Complaint asserts the legal conclusion that the party exception does not apply under the "crime-tort" exception under 18 U.S.C. § 2511(2)(d). The Complaint's legal argument fails.

The crime-tort exception is a narrow one. *See In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 514–15 (S.D.N.Y. 2001). A plaintiff seeking to invoke the crime-tort exception at the motion to dismiss stage "must plead sufficient facts" supporting an inference that it applies. *Caro*, 618 F.3d at 100. The exception has four elements:

1. Purpose: The interception must have been "for the purpose of committing a tortious or criminal act," *id.* at 98 (quoting 18 U.S.C. § 2511(2)(d));
2. Independence: The intent "to commit a crime or tort [must have been] independent of the act of recording itself," *id.* at 100;

3. Contemporaneousness: The defendant must have had the independent intent "at the time of the recording," *id.* at 99; and

4. Recorded Victim: The defendant must have intended to harm the party whose communications was intercepted, *Meredith v. Gavin*, 446 F.2d 794, 799 (8th Cir. 1971).

If a plaintiff fails to plausibly plead even one of the elements, the exception does not apply, and the ECPA claim should be dismissed.

**a. Plaintiffs do not allege a tortious or criminal *purpose*.**

The plain language of the exception requires acting with a tortious or criminal purpose. *See* 18 U.S.C. § 2511(2)(d); *Caro*, 618 F.3d at 100 ("Congress chose the word '*purpose*' for a reason." (emphasis in original)). A plaintiff must allege not just that a tortious or criminal result occurred but also that the defendant had this result as its "***objective***." *Caro*, 618 F.3d at 100 (emphasis added); *United States v. Jiau*, 734 F.3d 147, 152 (2d Cir. 2013); *DoubleClick*, 154 F. Supp. 2d at 517 (rejecting an argument that a "'tortious purpose' exists wherever an intentional action is later determined to have constituted a tort").

Plaintiffs state the exception does not apply because Gillette's purpose was to commit an invasion of privacy, violation of MUDTPA, and violation of HIPAA. (Doc. 1 ¶¶ 177–78.) Plaintiffs, however, plead no plausible facts that Gillette acted with the ***purpose*** or the ***objective*** to commit any of these. They merely state these legal conclusions. Even if Gillette had violated any of these laws (it did not), this would at most be a ***result***, not a purpose or objective. *See Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200

(9th Cir. 1999) ("[T]he focus is not upon whether the interception itself violated another law; it is upon whether the purpose for the interception—its intended use—was criminal or tortious." (citation omitted)).

Instead, Plaintiffs allege Gillette's purpose was "future ad targeting and marketing" to increase profits (Doc. 1 ¶ 4; *see also id.* ¶¶ 7, 28–29, 111, 175, 193.) Ad targeting, marketing, and increased profits are not criminal or tortious.

Other courts have held the crime-tort exception does not apply where the primary purpose for the alleged interception is based in financial gain—and not to tortiously injure the plaintiff. *See In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d at 519 (dismissing ECPA claim and holding the crime-tort exception inapplicable where defendant's "purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money by providing a valued service to commercial Web sites"); *Katz-Lacabe v. Oracle Am., Inc.*, No. 22-04792, 2023 WL 2838118, at *10 (N.D. Cal. Apr. 6, 2023) (finding crime-tort exception inapplicable where the goal was to "make money"). *But see Mekhail*, 2024 WL 1332260, at *5 n.4.

Courts have rejected applying the crime-tort exception in analogous contexts. *See Doe v. Kaiser Found. Health Plan, Inc.*, No. 23-CV-02865, 2024 WL 1589982, at *10 (N.D. Cal. Apr. 11, 2024) (holding that using tracking technologies "for market research and consumer analysis solely for the benefit of" the defendant does not "sufficiently allege[] a tortious purpose" even if defendant violated HIPAA); *DoubleClick*, 154 F. Supp. 2d at 518–19 (crime-tort exception inapplicable because plaintiffs failed to allege

defendant had intent to commit torts when it allegedly intercepted plaintiffs' communications); *but see Mekhail*, 2024 WL 1332260, at *5 n.4.

**b. Plaintiffs do not allege an *independent* tort or crime.**

For the crime-tort exception to apply, Plaintiffs must allege a crime or tort that is independent of the interception itself. *See United States v. Phillips*, 540 F.2d 319, 327 n.5 (8th Cir. 1976) (rejecting the argument that the recording itself was tortious); *Okash*, 2024 WL 1285779, at *4 ("It is well established that the crime-tort exception only applies where the defendant allegedly committed a tortious or criminal act independent from the act of recording itself." (cleaned up)); *see also Caro*, 618 F.3d at 100 (2d Cir.) ("A simultaneous tort arising from the act of recording itself is insufficient."); *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 276 (3d Cir. 2016); *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022) ("This criminal or tortious purpose must be separate and independent from the act of the recording."). If the interception is the crime or tort, the crime-tort exception does not apply. Otherwise, the crime-tort exception would write the party-exception out of the statute. *See Phillips*, 540 F.2d at 327 n.5; *Newman*, 51 F.4th at 1136 (noting that holding otherwise would be "circular").

The Complaint does not allege any torts or violations *independent* from the alleged interception—the alleged torts and violations arise out of the alleged interception itself. Therefore, even if Gillette committed these violations (it did not), the crime-tort exception still would not apply. *See Okash*, 2024 WL 1285779, at *4 (dismissing ECPA claim because Plaintiff's "allegations that Essentia violated HIPAA and privacy torts encompass

only the simultaneous interception and disclosure of information to Meta" and so were not independent).

#### c. Plaintiffs do not allege a *contemporaneous* tortious or criminal purpose.

For the crime-tort exception to apply, the defendant must have had the criminal or tortious purpose at the time of the interception. *Stewart v. City of Oklahoma City*, 47 F.4th 1125 (10th Cir. 2022) ("The plain language of § 2511(2)(d) requires that we ask whether, at the time a communication was intercepted, the consenting party possessed a criminal or tortious intent." (emphasis in original)); *Caro*, 618 F.3d at 99–100 ("If, at the moment he hits 'record,' the offender does not intend to use the recording for criminal or tortious purposes, there is no violation."); *Jiau*, 734 F.3d at 152. Even if Plaintiffs had alleged Gillette committed a crime or tort, Plaintiffs do not plausibly allege that Gillette had criminal or tortious intent at the time the interceptions allegedly occurred.

#### d. Plaintiffs do not allege Gillette intended to harm them personally with any supposed crime or tort.

Finally, for the crime-tort exception to apply, the defendant must have intercepted the communication "with an intent to use that interception against the non-consenting party in some harmful way." *Meredith v. Gavin*, 446 F.2d 794, 799 (8th Cir. 1971) (holding that recording a conversation to impeach did not violate the ECPA because it was not meant "to positively harm the plaintiff"); *Jiau*, 734 F.3d at 152 ("If, at the moment he hits record, the offender does not intend to use the recording for criminal or tortious purposes against the other party, there is no violation.") (cleaned up); *Caro*, 618 F.3d at 100 ("[I]f, at the

time of the recording, the offender plans to use the recording to harm the other party to the conversation, a civil cause of action exists under the Wiretap Act.”).

Even if Plaintiffs alleged an intent to commit a crime or tort, Plaintiffs do not allege that Gillette intended to harm Plaintiffs.

**3. Plaintiffs fail to state a claim for “procurement” or “use.”**

To the extent the Complaint alleges ECPA claims for “procurement” or “use,” those claims also fail.

The ECPA does not provide a cause of action for procuring. *Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 168–69 (5th Cir. 2000). Plaintiffs’ “procuring” claim fails.

Under the ECPA, “use” requires an underlying “interception.” *See* 18 U.S.C. § 2511(1)(c)–(d). “Use” also requires that the user knew or should have known that the communication was intercepted unlawfully. *Forsyth v. Barr*, 19 F.3d 1527, 1538 (5th Cir. 1994); *Thompson v. Dulaney*, 970 F.2d 744, 750 (10th Cir. 1992); *Hari v. Smith*, No. 20-1455, 2022 WL 1122940, at *19 (D. Minn. Jan. 31, 2022) (citing *Thompson*), *R.&R. adopted*, 2022 WL 612100 (D. Minn. Mar. 2, 2022).

Plaintiffs allege Gillette was the interceptor, therefore the party exception applies; accordingly, there was no “interception” and no “use.” *See Okash*, 2024 WL 1285779, at *4 (“But the party exception applies . . . . Accordingly, *Okash* does not plead an unlawful interception. And because the use and disclosure prohibitions require an underlying unlawful interception, neither were those provisions violated.”). To the extent Plaintiffs contend a non-party was the interceptor and that Gillette had knowledge that the

communication was intercepted unlawfully, Plaintiffs have failed to plausibly allege facts to support that claim.

The Court should dismiss Count I.

### B. Plaintiffs Fail to State an Invasion of Privacy Claim (Count II).

A claim for intrusion upon seclusion has three elements: (1) an intrusion; (2) that is highly offensive; and (3) into some matter in which a person has a legitimate expectation of privacy. *Rasmusson v. Chisago Cnty.*, 991 F. Supp. 2d 1065, 1078 (D. Minn. 2014).

For an intrusion to occur, a defendant must partake in an "affirmative act . . . in obtaining the information at issue." *See Lehman v. Zumbrota-Mazeppa Pub. Sch.*, No. A04-1226, 2005 WL 894756, at *4 (Minn. Ct. App. Apr. 19, 2005).

Where a plaintiff voluntarily provides information to a defendant, a defendant has not intruded into plaintiff's private affairs, ***even if*** that information is subsequently disclosed. *See Lehman*, 2005 WL 894756, at *4 (affirming lack of intrusion where plaintiff voluntarily provided his medical leave letter which was later disclosed to the press—noting that what plaintiff "object[ed] to is not the school district obtaining the letter but its publication of the letter"); *C.L.D. v. Wal-Mart Stores, Inc.*, 79 F. Supp. 2d 1080, 1083 n.1 (D. Minn. 1999) ("[P]laintiff voluntarily disclosed her medical circumstances to [the defendant] and cannot claim that he obtained the information by intrusive means.").

Courts dismissed intrusion upon seclusion claims under nearly identical facts as those alleged in the Complaint. *See Okash v. Essentia Health*, No. 23-482, 2024 WL 1285779, at *7 & n.9 (D. Minn. Mar. 26, 2024) ("Courts generally agree that when a plaintiff voluntarily browses a healthcare website, there is no intrusion when the Pixel

transmits the information to Meta"); *but see In re Grp. Health Plan Litig.*, 2023 WL 8850243, at *3 (use of Facebook Pixel is "suggestive of intentional" intrusion).

Because Plaintiffs voluntarily engaged in communications with Gillette, Gillette could not have intruded into Plaintiffs' private affairs. *See Okash*, 2024 WL 1285779, at *7.

Even if Gillette committed an intrusion, Plaintiffs fail to plausibly allege this was "highly offensive." Courts have held that "data collection and disclosure to third parties that is 'routine commercial behavior' is not a 'highly offensive' intrusion of privacy." *Hammerling v. Google*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022) (citing *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012); *Google Priv. Pol'y*, 58 F. Supp. 3d 968, 987–88 (N.D. Cal. 2014). This is particularly true where the data allegedly collected is not "sufficiently specific or personal." *Hammerling*, 615 F. Supp. 3d at 1091.

A banner on Gillette's website notifies users of the website's use of cookies, and Gillette's Legal Notices explicitly provides that it may use the technologies complained of, may collect a user's information, and may disclose this information to third parties. Plaintiffs' allegations are nothing other than "routine commercial behavior." *See Hammerling*, 615 F. Supp. 3d at 1090; *but see In re Grp. Health Plan Litig.*, 2023 WL 8850243, at *3. Moreover, any alleged collection of Plaintiffs' IP addresses or URL data from browsing publicly accessible information is not sufficiently personal or specific.

Lastly, even if any of the data Plaintiffs allege was shared could in theory be sufficiently personal, Plaintiffs do not allege that any of ***their*** health data was shared. (*See supra* Section I.)

Count II should be dismissed.

### C. Plaintiffs Fail to State a Negligence Claim (Count III).

"Negligence is the failure to exercise the level of care that a person of ordinary prudence would exercise under the same or similar circumstances." *Doe 169 v. Brandon*, 845 N.W.2d 174, 177 (Minn. 2014). To succeed on a negligence claim, a plaintiff must prove "(1) the existence of a duty of care; (2) a breach of that duty; (3) an injury; and (4) that the breach of the duty was a proximate cause of the injury." *Id.*

#### 1. Plaintiffs fail to allege Gillette owed a duty to them.

Plaintiffs allege that "[m]edical providers have a duty to keep their patients' Personal Information completely confidential." (Doc. 1 ¶ 201 (citing Minn. Stat. § 144.651, subd. 15–16 and Minn. Stat. § 144.293).) Those statutes address patients' rights related to their medical records. Gillette's duty is to its ***patients***. Plaintiffs are not patients, so Gillette does not owe this duty to Plaintiffs. To the extent Gillette owes any duty, it is to Plaintiffs' children. Because Plaintiffs do not allege Gillette owed any duty to them, , this claim fails as a matter of law.

#### 2. Plaintiffs do not allege Gillette breached a duty to them.

Even if Plaintiffs alleged that a duty was owed to them, they fail to allege a breach of that duty. Minn. Stat. §§ 144.293, 144.651, subd. 15–16 protect health, medical care, treatment, and other similar records. *See also* Minn. Stat. § 144.291, subd. 2(c) (defining "health record").

Plaintiffs alleged a disclosure of "Personal Information," but that term includes information that is *not* protected. Plaintiffs failed to allege the information Gillette

allegedly shared with third parties is a health record. Plaintiffs did not plead that a single diagnosis, treatment, medication, or any other medical record of theirs was disclosed to any third party. Instead, they alleged Gillette shared browsing metadata of a non-patient, which is not a confidential health record under Minnesota law.

#### 3. Plaintiffs do not allege they sustained an injury.

To state a claim for negligence, a plaintiff must allege that "an injury was sustained ***by the plaintiff***." *DeShane v. City of Minneapolis*, No. 21-1452, 2022 WL 624579, at *3 (D. Minn. Mar. 3, 2022) (emphasis added). Plaintiffs did not sustain any injuries because they are not patients and their information was not shared. Others alleged injuries sound in contract, (Doc. 1 ¶ 206(e)–(f)), and are not a basis for a negligence claim. *See Glorvigen v. Cirrus Design Corp.*, 816 N.W.2d 572, 584 (Minn. 2012); *Fairview Health Servs. v. Armed Forces Off. of Royal Embassy of Saudi Arabia*, No. 21-2666, 2023 WL 8481554, at *6 (D. Minn. Dec. 7, 2023).

The Court should dismiss Plaintiffs' negligence claim.

### D. Plaintiffs Fail to State a Breach of Implied Contract Claim (Count IV).

To assert a breach of implied contract claim, a plaintiff must allege "the formation of a contract, performance by the plaintiff of any conditions precedent, a material breach of the contract by the defendant, and damages." *Chey v. Metro. Airports Comm'n*, No. 22-1429 (KMM/DTS), 2023 WL 2308272, at *6 (D. Minn. Mar. 1, 2023) (quoting *Tri-State Bobcat, Inc. v. FINN Corp.*, 338 F. Supp. 3d 971, 982 (D. Minn. 2018)) (alteration in original). "A contract may be implied in fact where the circumstances clearly and unequivocally indicate the intention of the parties to enter into a contract." *Id.* (cleaned up).

There must be "a meeting of the minds as to the terms of the contract." *Tri-State Bobcat*, 338 F. Supp. 3d at 982. Whether the parties' mutual assent to the essential elements of the implied contract existed "is tested under an objective standard." *Azarax, Inc. v. Syverson*, 398 F. Supp. 3d 425, 436 (D. Minn. 2019) (quotation marks and citation omitted).

Plaintiffs base their implied contract on Gillette's Legal Notices. (*See* Doc. 1 ¶ 106–12.) Even if the Legal Notices were an implied contract, they provide that Gillette may share data with third parties. (Legal Notices at 3–4.)

Plaintiffs do not allege any cognizable breach of contract damages. Plaintiffs allege their damages are "the loss of the benefit of their bargain and diminution in value of Personal Information." (Doc. 1 ¶ 213.) Plaintiffs allege no facts supporting either of these damages.

In addition, this claim fails because Plaintiffs did not provide their "Personal Information" to Gilette; therefore they suffered no damages related to their "Personal Information." Even if Plaintiffs had submitted their "Personal Information" (they did not), the Complaint contains no plausible factual allegations that the value of this data has diminished. *See Khan v. Children's Nat'l Health Sys.*, 188 F. Supp. 3d 524, 533 (D. Md. 2016) (dismissing claims where third parties obtained actual medical records and Social Security numbers because plaintiff had not explained how "possession of that information has diminished its value, nor does she assert that she would ever actually sell her own personal information"); *In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 930–31 (N.D. Cal. 2015) (holding that although the information may have "significant" "economic value" plaintiffs failed to "connect this value to a realistic economic harm or

loss that is attributable to Facebook's alleged conduct" in part because plaintiffs failed to allege "they personally lost the opportunity to sell their information"); *but see In re Grp. Health Plan Litig.*, 2023 WL 8850243, at *3–4 (holding that allegations about lost value were sufficient at the motion to dismiss stage).

**E. Plaintiffs Fail to State an Unjust Enrichment Claim (Count V).**

"To state a claim for unjust enrichment, a plaintiff must allege facts showing that the plaintiff conferred a benefit on the defendant, the defendant appreciated and knowingly accepted the benefit, and the defendant's acceptance and retention of the benefit under the circumstances would be unjust or inequitable." *Hall v. Centerspace, LP*, No. 22-2028 (KMM/DJF), 2023 WL 3435100, at *6 (D. Minn. May 12, 2023). A plaintiff must also allege an "uncompensated" benefit. *See Amann v. Allianz Income Mgmt. Servs., Inc.*, No. A09-1891, 2010 WL 3220061, at *5 (Minn. Ct. App. Aug. 17, 2010). Minnesota courts "have limited the application of unjust enrichment to claims premised on an implied or quasi-contract between the claimant and the party alleged to be unjustly enriched." *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 838 (Minn. 2012).

Because Plaintiffs do not allege their health information was shared, they have failed to state a claim for unjust enrichment.

Plaintiffs also failed to plausibly allege any implied contract related to their use of the website.

Plaintiffs fail to plausibly allege that they conferred an uncompensated benefit on Gillette. Plaintiffs allege that by using Gillette's website, they conferred a benefit upon Gillette, which Gillette unjustly retained. However, the Complaint provides only vague and

conclusory allegations in connection with this claim, alleging Gillette received "economic, intangible, and other benefits, including substantial monetary compensation," without providing any details including what those benefits are or who provided the monetary compensation. (Doc. 1 ¶ 217.) This conclusory allegation is insufficient to plausibly allege a benefit. *See Iqbal*, 556 U.S. at 678; *but see Mekhail*, 2024 WL 1332260, at *13; *Okash*, 2024 WL 1285779, at *7.

Even if Plaintiffs conferred a benefit on Gillette, the Complaint fails to allege any benefit was "uncompensated." *See Amann*, 2010 WL 3220061, at *5. Plaintiffs allege they received substantial benefits from the use of Gillette's website including the ability to communicate with Gillette and research health conditions and providers. (Doc. 1 ¶¶ 80, 95.)

The "plausibly alleged exchange" was Gillette providing healthcare to Plaintiffs' children in exchange for payment. *See Hall*, 2023 WL 3435100, at *7. Gillette's data practices on its website cannot serve as the basis for an unjust enrichment claim because Plaintiffs do not allege that they paid more for healthcare to prevent data sharing than those who did not provide data on Gillette's website. *See id.*

The Complaint also does not allege Gillette acted unjustly. Plaintiffs' basis for their unjust enrichment claim is that Gillette used tracking technologies and shared information with third parties. (*See* Doc. 1 ¶ 217.) However, Gillette disclosed that it used tracking technologies, including pixels and Google Analytics, and third parties may receive information. (*See* Legal Notices at 3–4.) It is not plausibly "unjust" for Gillette to act consistently with its statements to Plaintiffs. *But see Mekhail*, 2024 WL 1332260, at *13.

That Gillette allegedly benefited from this practice does not give rise to an unjust enrichment claim. *See Caldas*, 820 N.W.2d at 838.

Plaintiffs' unjust enrichment claim should be dismissed.

**F. Plaintiffs Fail to State an MUDTPA Claim (Count VI).**

Plaintiffs allege Gillette violated Minn. Stat. § 325D.44, subds. 1(5), (7). These subsections bar certain misrepresentations regarding the nature of goods and services offered in the course of business. Minn. Stat. § 325D.44, subds. 1(5), (7). MUDTPA provides that a person "likely to be damaged by a deceptive trade practice of another may be granted an injunction against it." Minn. Stat. § 325D.45, subd. 1. Rule 9(b)'s heightened pleading standard applies to MUDTPA claims. *E-Shops Corp. v. U.S. Bank Nat. Ass'n*, 678 F.3d 659, 665 (8th Cir. 2012).

**1. Plaintiffs fail to plausibly allege deceptive statements.**

The Complaint alleges that Gillette: (1) mispresented and/or omitted information related to whether it would reasonably protect the privacy of Plaintiffs' information; (2) misrepresented and/or omitted information related to its compliance with the law. (*See id.* ¶ 226(d)–(g).) Plaintiffs must show that Gillette's misrepresentations and/or omissions would have deceived a reasonable consumer. *See Song v. Champion Petfoods USA, Inc.*, No. 18-CV-3205 (PJS/KMM), 2020 WL 7624861, at *3 (D. Minn. Dec. 22, 2020), *aff'd*, 27 F.4th 1339 (8th Cir. 2022).

No reasonable consumer would be deceived because Gillette's website was clear about what technologies it employed. Gillette's cookie banner disclosed the use of cookies, and the Legal Notices specifically and affirmatively notified users of everything Plaintiffs

complain of, including pixels, Google Analytics, and other tracking technologies. Gillette's website cannot be considered "deceptive," even at the Rule 12 stage, when it specifically provided notice of the technology on which the Complaint is based. *See id.; but see Mekhail*, 2024 WL 1332260, at *8 (declining to address the meaning of a representation at the motion to dismiss stage).

**2. Plaintiffs fail to allege a causal nexus.**

Plaintiffs must allege "a causal nexus between the conduct alleged to violate [Minnesota consumer protection laws] and the damages claimed. *Grp. Health Plan, Inc. v. Philip Morris Inc.*, 621 N.W.2d 2, 4, 13 (Minn. 2001). Even if a plaintiff alleges that some market participants relied on a defendant's statements that alone is insufficient to show a causal nexus. *Luckey v. Alside, Inc.*, 245 F. Supp. 3d 1080, 1098 (D. Minn. 2017).

Plaintiffs' only allegation about reliance is a conclusory statement that they "acted reasonably in relying on Defendant's misrepresentations and omissions." (Doc. 1 ¶ 232.) Plaintiffs do not identify where Gillette supposedly misrepresented or omitted information related to data tracking. Given that Gillette's website affirmatively disclosed use of pixels, Google Analytics, and tracking technologies, Plaintiffs failed to plausibly allege a "causal nexus" between an alleged misrepresentation and any damages they suffered. *See Luckey*, 245 F. Supp. 3d at 1098 (dismissing MUDTPA claim where the complaint contained only the conclusory statement that "'purchasers' relied on Alside's offending statements" and "no factual allegations about who heard or saw and relied on" supporting this conclusory statement).

### 3. Plaintiffs fail to allege that they are likely to suffer future harm.

MUDTPA creates a remedy for a "person likely to be damaged by a deceptive trade practice." Minn. Stat. § 325D.45, subd. 1. A plaintiff must allege a likelihood of future harm. *See Jaskulske*, 2014 WL 5530758, at *6 (dismissing a MUDTPA claim for failing to allege a likelihood of future harm).

Similarly, to have Article III standing for this claim, a plaintiff must allege that an injunction would redress an imminent injury for the plaintiff. This is so because the only remedy available under MUDTPA is injunctive relief for future harms. *See* Minn. Stat. § 325D.45; *see also Barclay v. Icon Health & Fitness, Inc.*, No. 19-2970, 2022 WL 486999, at *1 (D. Minn. Feb. 17, 2022) ("The MDTPA's only remedy is injunctive relief"). To have standing, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (cleaned up). Even if a plaintiff has standing for a damages claim for past harms, the plaintiff may not for an injunction. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021); *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983).

A plaintiff alleging MUDTPA violations is on notice of the practice and can no longer be deceived or harmed by continued violations. *Jaskulske*, 2014 WL 5530758, at *6 ("Having experienced, investigated, and alleged the settlement practice, Jaskulske is on notice of the practice and can no longer say that he will again be deceived by the practice."); *see also Olen v. N. Tier Retail, LLC*, No. 11-2665, 2012 WL 1580994, at *6 (D. Minn. May 4, 2012). Because Plaintiffs are on notice of the alleged practice, Plaintiffs cannot be

deceived again if they choose to continue using Gillette's website and so are not likely to be harmed.[5]

For similar reasons, Plaintiffs lack standing. *See Barclay*, 2022 WL 486999, at *2 (holding that MDTPA's likelihood of harm requirement is "indistinguishable from Article III's threat-of-future-harm requirement"). Plaintiffs' risk of future harm is speculative, not imminent, because they do not allege they must imminently use Gillette's website or medical services. *See Lujan*, 504 U.S. at 564 & n.2 (holding that plaintiffs lacked standing despite alleging they had visited a place allegedly affected by the defendant and they intended to "some day" return there).[6] Plaintiffs' alleged harms are based on Gillette's past practices. An injunction would not redress these because third parties allegedly already have the data. Plaintiffs have no standing for this claim. *See Barclay*, 2022 WL 486999, at *2 (denying motion for reconsideration of dismissal of MUDTPA class action claim for lack of standing).

**4. Because Gillette has disabled tracking technologies on its website, Plaintiffs' MUDTPA claim is moot.**

Even if Plaintiffs could overcome these obstacles, the Court should dismiss the MUDTPA claim because Gillette has disabled Meta Pixel and Google Analytics.[7] Plaintiffs

---

[5] Courts have expressed the concern that adopting this theory could render public interest statutes futile. However, other remedies remain. The Minnesota Attorney General and competitors can pursue MUDTPA claims. *See State v. Minnesota Sch. of Bus., Inc.*, 935 N.W.2d 124, 127 (Minn. 2019); *Hillerich & Bradsby Co. v. Christian Bros.*, 943 F. Supp. 1136, 1140 (D. Minn. 1996).

[6] Unlike the *Lujan* plaintiffs who specifically alleged that they intended to return in the future, Plaintiffs have not alleged an intent to return. 504 U.S. at 564.

[7] The Court may consider these facts for this Motion to Dismiss. *See Zean*, 858 F.3d at 526; *see also Nelson Auto Ctr.*, 951 F.3d at 955–56; *WinRed, Inc v. Ellison*, 581 F. Supp.

are not likely to be harmed in the future and injunctive relief would not redress any alleged harm because Gillette has already stopped the practices complained of. *See Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836, 847–48 (N.D. Ill. 2023) (dismissing analogous deceptive trade practices act claim where the health care defendant ceased transmissions to Google and Facebook).

Plaintiffs' MUDTPA claim should be dismissed.

## CONCLUSION

The Court should grant Gillette's Motion to Dismiss Plaintiffs' Complaint.

Dated: July 18, 2024

*s/ Nicole M. Moen*
Nicole M. Moen (#0329435)
Geoffrey W.B. Koslig (#0402717)
**FREDRIKSON & BYRON, P.A.**
60 South Sixth Street, Suite 1500
Minneapolis, MN 55402-4400
Telephone: 612.492.7000
Facsimile: 612.492.7077
nmoen@fredlaw.com
gkoslig@fredlaw.com

***Attorneys for Defendant***
***Gillette Children's Specialty Healthcare***

3d 1152, 1167 n.9 (D. Minn. 2022) (courts may consider the content of a parties' website), *aff'd*, 59 F.4th 934 (8th Cir. 2023) Plaintiffs can verify these facts using the same methods they allegedly detected their presence in the first place. (*See* Doc. 1 ¶¶ 65–72.)