**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

KAYLA HARRIS AND STEPHANIE BRAULICK,

*individually, and on behalf of those similarly situated*,

Plaintiff,

v.

GILLETTE CHILDREN'S SPECIALTY HEALTHCARE,

*a Minnesota nonprofit corporation*,

Defendant.

Case No. 24-cv-01687 (KMM/JFD)

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

---

**TABLE OF CONTENTS**

Page

ARGUMENT ..... 1

I. PLAINTIFFS LACK STANDING. ..... 1

II. THE AHA DECISION. ..... 4

III. THE COMPLAINT VIOLATES RULE 8. ..... 6

IV. PLAINTIFFS' ECPA CLAIM FAILS. ..... 7

A. The Complaint fails to plausibly allege the crime-tort exception applies. ..... 7

B. Plaintiffs cannot proceed on "use" or "procurement" theories. ..... 9

C. Gillette did not intercept or disclose the "contents" of Plaintiffs' communications. ..... 10

V. PLAINTIFFS' INTRUSION UPON SECLUSION CLAIM FAILS. ..... 11

VI. PLAINTIFFS' NEGLIGENCE CLAIM FAILS. ..... 12

VII. PLAINTIFFS' BREACH OF IMPLIED CONTRACT CLAIM FAILS. ..... 14

VIII. PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS. ..... 15

IX. PLAINTIFFS' MUDTPA CLAIM FAILS. ..... 15

CONCLUSION ..... 16

## ARGUMENT

### I. PLAINTIFFS LACK STANDING.

Plaintiffs are not Gillette's patients. Yet they have sued in their own capacity for harms allegedly suffered by their children. Plaintiffs admit their claims rely on a novel theory of standing: Plaintiffs must be treated "***as if*** they were the patients themselves." (Resp., 5 (emphasis added).) Plaintiffs combine the experiences of different people—themselves and their children—in an attempt to manufacture standing for Plaintiffs' claims based on Gillette's alleged tracking of "Personal Information." According to Plaintiffs, this ambiguous term includes both PII and PHI, (Compl. ¶ 1), but the PII and PHI belong to different people—the PII belongs to Plaintiffs, (*e.g.*, Facebook ID number, computer IP addresses, etc. (*see id.* ¶ 60)); whereas the PHI belongs to Plaintiffs' children, (*see, e.g.*, *id.* ¶ 4). Plaintiffs' claims fail because their novel theory of standing fails as a matter of law.

Plaintiffs make no effort to square their theory with the well-established requirements of Article III standing and cite no case endorsing their theory. Instead, Plaintiffs' theory is based on 45 C.F.R. § 164.502(g), one of HIPAA's enacting regulations. (Resp., 5.) That regulation has nothing to do with online tracking; its purpose is to ensure that personal representatives can obtain and authorize release of a patient's protected health information to facilitate care of the individual. *See* 65 Fed. Reg. 82462, 82500–01 (noting § 164.502 "does not constitute a general grant of authority to personal representatives" and that it ensures disclosure of information to personal representatives); 67 Fed. Reg. 53182, 53199–203 (discussing personal representatives' access to information when amending § 164.502). HHS made clear this provision's three goals: (1) "assur[ing] that parents have

appropriate access to health information," (2) not interfering with state laws regarding parental rights and parents' role "in making health care decisions," and (3) not interfering with existing ethics codes and practices regarding health information and minors seeking care. 67 Fed. Reg. 53182, 53200.

Plaintiffs' reliance on this regulation for Article III standing is misplaced. First, the Complaint does not contain sufficient facts to establish that Plaintiffs would even be covered by the regulation. The regulation applies only to patients' "personal representatives," but parents are not automatically personal representatives for their children. *See* 45 C.F.R. § 164.502(g)(2)–(3)(i); *see also* 67 Fed. Reg. 53182, 53200 (noting, when amending the regulation, that it is meant "to defer to State or other applicable law" regarding when someone represents a patient). Plaintiffs allege no facts for the Court to reasonably infer they fall within the terms of the regulation—in fact, they failed to even allege they have legal custody of their children.

Even where a person is a personal representative generally, the regulation only applies to "protected health information relevant to such personal representation." 45 C.F.R. § 164.502(g)(3)(i). While Plaintiffs do not plead HIPAA "protected health information" was shared here, even if they had, they plead no facts showing that the information was "relevant to such personal representation." Plaintiffs did not plead that they have the authority required here nor that they meet any element of the regulation except that they are parents.

Second, even if the regulation applied, it does not create statutory standing because neither the regulation nor HIPAA creates a private right of action. *See Adams v. Eureka*

*Fire Prot. Dist.*, 352 F.App'x 137, 138–39 (8th Cir. 2009); 45 C.F.R. § 164.502(g). In fact, the regulation does not even purport to create a universally applicable rule—it expressly applies only "for purposes of this subchapter," *i.e.*, HIPAA's enacting regulations. 45 C.F.R. § 165.502(g)(1). Thus, even if it did create a right of action, it does not apply here because Plaintiffs are not seeking any remedies under HIPAA.

Finally, even if the regulation applied in the manner Plaintiffs claim, Plaintiffs still would not have Article III standing because they have not suffered an injury in fact. Although "Congress may enact legal prohibitions and obligations[,] . . . under Article III, injury in law is not an injury in fact. Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021) (emphasis in original). In *TransUnion*, the Supreme Court considered and rejected a similar argument for standing, concluding that even when a law authorizes a plaintiff to sue and someone else may have been harmed, a plaintiff without a concrete harm does not have standing. *Id.* Plaintiffs cannot sue "merely seeking to ensure a defendant's compliance with regulatory law." *Id.* at 427–28 (cleaned up).

Plaintiffs argue this creates a "Catch-22" regarding who could assert claims. (Resp., 6.) But as the Supreme Court recognized in *TransUnion*, not every alleged wrong creates a plaintiff with Article III standing. *See TransUnion*, 594 U.S. at 434 (noting that the "mere existence" of a legal violation "is insufficient to confer Article III standing" even when

connected to the plaintiff).[1] The Court should address the Complaint as drafted, not a hypothetical complaint involving different plaintiffs and unpled theories.

The cases Plaintiffs cite do not even mention the regulation, nor do they support Plaintiffs' theory of "personal representative" standing. (Resp., 7.) *Frances v. Schudrich*, No. 05-981, 2006 WL 8456997, at *6 (D. Md. Aug. 11, 2006), addressed whether parents had standing to assert a claim for unreasonable disclosure of private facts based upon the disclosure of their children's participation as witnesses in a sexual abuse investigation. The court concluded that the parents could claim "a right of privacy in the 'intimate details' of their family life." *Id.* Here, by contrast, Plaintiffs are trying to recover for harms allegedly suffered by their children. The other case on which Plaintiffs rely, *Kanuszewski v. Michigan Department of Health and Human Services*, is even less apposite. In *Kanuszewski*, the children were plaintiffs. 684 F.Supp.3d 637, 644 (E.D. Mich. 2023) ("Plaintiffs are four parents and their nine Michigan-born infants[.]"). Moreover, standing was not contested; the case concerned privacy interests in a person's blood samples. *See id.* at 648.

Plaintiffs do not have Article III standing and their Complaint should be dismissed.

## II. THE AHA DECISION.

Plaintiffs are incorrect that *American Hospital Ass'n v. Becerra* ("*AHA*"), 2024 WL 3075865, (N.D. Tex. June 20, 2024) has no bearing here. Plaintiffs misconstrue the fact

[1] Plaintiffs quote *McCann v. Hy-Vee, Inc.*, 663 F.3d 926, 931 (7th Cir. 2011) for the proposition "that the law is 'unlikely to countenance' a 'heads I win, tails you lose, proposition." (Resp., 6.) The court in *McCann* noted nonetheless that "there is no tort without an injury." 663 F.3d at 931.

that only one portion of the Guidance was challenged, and thus vacated, in *AHA* as an implicit endorsement of the rest of the Guidance. Plaintiffs then imply that the court in *AHA* actually endorsed specific portions of the Guidance that Plaintiffs think are relevant here. (*See* Resp., 9.) Plaintiffs are mistaken.

*AHA* reasoned that (1) information that is merely "indicative" of health information or (2) information that does not identify the specific patient and that the website visit is for that specific person is beyond the definition of individually identifiable health information and thus is beyond the scope of HIPAA. *AHA*, 2024 WL 3075865, at *12–14.

This reasoning applies with equal force to the other information on which Plaintiffs' claims are based. For example, in support of their claim that appointment information was shared, Plaintiffs point to a paragraph of the Complaint indicating that Meta Pixel could capture the fact that someone clicked on a phone number on a provider's page. (Resp., 9–10 (citing Compl. ¶ 69).) Clicking on a phone number could be done for any number of reasons. The click reveals nothing about why a person clicked. And even if the purpose was to schedule an appointment, the click does not capture who the appointment is for—the person, their child, or some other family member, friend, or third party. As *AHA* found—and Plaintiffs do not dispute—a click is at most "indicative" of health information and does not identify a particular patient and so is beyond the scope of HIPAA. *See AHA*, 2024 WL 3075865, at *12–14.

*AHA* applies with more force here because the Guidance addresses people searching for their ***own*** health issues. (Opening Br., 7.) Here, because the person engaging with the

website is not the patient, the information allegedly disclosed is not identifiable to a specific patient. *See AHA*, 2024 WL 3075865, at *12–14.

Plaintiffs point to other cases where courts have denied motions to dismiss after *AHA*. (Resp., 10–11.) None of the cited cases addresses *AHA* or the Guidance, and the plaintiffs were patients and/or used the website for reasons related to their own health. Plaintiffs also ignore recent cases dismissing similar claims. *See, e.g.*, *R.S. v. Prime Healthcare Servs., Inc.*, No. 24-330, 2024 WL 3730609 (C.D. Cal. Aug. 7, 2024); *Rodriguez v. FastMed Urgent Care, P.C.*, No. 23-403, 2024 WL 3541582 (E.D.N.C. July 24, 2024); *see also Andrews v. Prisma Health*, No. 23-03153, 2024 WL 3861384 (D.S.C. Aug. 16, 2024).

## III. THE COMPLAINT VIOLATES RULE 8.

Plaintiffs' Complaint runs afoul of Rule 8 through its length and ambiguous defined terms. Plaintiffs' definition of "Personal Information" incorporates additional, undefined terms; eschews the widely accepted definition of "PHI" despite Plaintiffs' reliance on sources that use the accepted definition; and impermissibly lumps allegations together and fails to distinguish between information belonging to Plaintiffs and information belonging to their children.

Plaintiffs' term "Tracking Tools" does not provide notice as to which technologies are relevant and impermissibly lumps together allegations regarding different technologies. Plaintiffs' Opposition appears to change the definition. (*Compare* Resp., 14, *with* Compl. ¶ 1.)

The Court should not endorse Plaintiffs' kitchen sink and copy-cat approach to pleading in clear contravention of Rules 8 and 11. *See Gurman v. Metro Hous. & Redevelopment Auth.*, 842 F.Supp.2d 1151, 1153 (D. Minn. 2011).

## IV. PLAINTIFFS' ECPA CLAIM FAILS.

### A. The Complaint fails to plausibly allege the crime-tort exception applies.

Plaintiffs argue that the crime-tort exception applies if a defendant's actions ***resulted*** in a criminal or tortious outcome. But the crime-tort exception is not a ***results*** test. *See* 18 U.S.C. § 2511(2)(d); Opening Br., 13–15 (collecting cases). Plaintiffs do not point to any allegations plausibly showing that Gillette had the ***purpose*** of committing a crime or tort. (*See* Resp., 17–20.) For example, Plaintiffs argue that Gillette intended to violate the MUDTPA, but the allegations Plaintiffs cite are either bare legal conclusions or merely allege results, not purpose. (*See id.* at 20 (citing Compl. ¶¶ 177, 221–37).)

Similarly, Plaintiffs do not point to any allegations plausibly showing that Gillette's alleged interception was ***independent*** of its criminal or tortious purpose. According to the Complaint, Gillette's alleged interception and disclosure occurred in a single action. (*See* Compl. ¶¶ 62, 66.) Plaintiffs fail to allege that this single action was independent of Gillette's criminal or tortious intent. This is insufficient to meet the independence prong. *See Okash v. Essentia Health*, No. 23-482, 2024 WL 1285779, at *4 (D. Minn. Mar. 26, 2024). Plaintiffs cite Paragraph 177, which lists laws they contend Gillette violated. (Resp., 21.) The alleged violations all relate to the same action. This is not what "independent" means and would write the party-exception out of the statute. (Opening Br., 15 (collecting cases).)

Plaintiffs' argument that they alleged a contemporaneous tortious or criminal purpose has a similar error: at best Plaintiffs alleged a result, not such a contemporaneous purpose. (*See* Resp., 23 (citing Compl. ¶¶ 3, 9, 29, 56, 193, 203).) While Paragraphs 3, 29, and 193 allege Gillette intentionally or knowingly installed certain tools, they do not allege that Gillette had the *purpose* to violate a law when it did. Paragraph 56 states that something occurred contemporaneously, but that is a result—not a purpose. Paragraph 203 relates to their negligence claim, stating that Gillette acted negligently, but one cannot act with the purpose of being negligent. *See Noske v. Friedberg*, 713 N.W.2d 866, 876 (Minn. Ct. App. 2006) ("The very fact that an act is characterized as negligent indicates that harm to another as the result of it was neither foreseen *nor intended*[.]" (cleaned up)); *Smith v. Johnson*, 779 F.3d 867, 871 (8th Cir. 2015) (negligence is "mutually exclusive" of intent). Paragraph 9 is just a legal conclusion with no facts and cannot support this element. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiffs next argue that because they were harmed, they satisfy the intended victim prong. (Resp., 23–24.) Plaintiffs were not harmed. *See supra* § I. Even if they were harmed, the Complaint does not allege that Gillette intended to harm them.

Finally, Plaintiffs argue that resolution of the crime-tort exception is inappropriate at this stage because determination of Gillette's intent is a factual question. (Resp., 26–27.) Plaintiffs ignore their pleading burden, urging the Court to apply a "may be able to show" standard and relying on a pre-*Twombly*/*Iqbal* case that used the abrogated any set of facts standard. (*Id.* (citing *Doe v. Smith*, 429 F.3d 706 (7th Cir. 2005)).) They cannot merely state the conclusion that Gillette had criminal or tortious intent; they must allege sufficient

facts to plausibly support this conclusion. *See Iqbal*, 556 U.S. at 678–79; *Caro*, 618 F.3d at 100 (affirming dismissal of ECPA claim for failing to plead sufficient facts supporting crime-tort exception); *Okash*, 2024 WL 1285779, at *4–5 (dismissing ECPA claim in health care website tracking technology case for failing to allege sufficient facts supporting crime-tort exception).

**B. Plaintiffs cannot proceed on "use" or "procurement" theories.**

Plaintiffs do not dispute that if the party exception applies, there is no "use" claim. As explained above, the party exception applies.

Plaintiffs also do not dispute that a "use" claim requires that the user knew or should have known that the communication was intercepted unlawfully. (*See* Resp., 24–25; *see also* Opening Br., 17–18 (addressing this requirement).) Plaintiffs did not allege that Gillette had knowledge that the interception was unlawful. (*See* Opening Br., 17–18.) Plaintiffs cite Paragraph 176, which alleges Gillette knew of an interception, not that Gillette knew the interception was unlawful. It is undisputed that knowledge of unlawfulness is required. Merely alleging knowledge of the interception does not allege a "use" claim.

A procurement claim fails because the plain language of the ECPA does not provide a cause of action for procuring. 18 U.S.C. § 2520(a). Every circuit court that has addressed "procurement" claims and several district courts are in agreement. *See, e.g., Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 168–69 (5th Cir. 2000); *Kirch v. Embarq Mgmt. Co.*, 702 F.3d 1245, 1247 (10th Cir. 2012); *Gunderson v. Gunderson*, No. 02-1078, 2003 WL 1873912, at *2 (W.D. Mo. Apr. 14, 2003). The cases on which Plaintiffs rely are inapposite

or unpersuasive. (Resp., 25–26.) Two do not even address procurement civil liability. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020); *United States v. Szymuszkiewicz*, 622 F.3d 701 (7th Cir. 2010), *as amended* (Nov. 29, 2010). The remainder are inconsistent with the plain language of § 2520(a) for the reasons explained in *Peavy*, *Kirch*, and *Gunderson*. Moreover, in two of those cases, the procurement discussion was dicta or unnecessary to resolve the issue. *See Lonegan v. Hasty*, 436 F.Supp.2d 419, 428 (E.D.N.Y. 2006); *Valentine v. WideOpen W. Fin., LLC*, 288 F.R.D. 407, 412 n.3 (N.D. Ill. 2012).

### C. Gillette did not intercept or disclose the "contents" of Plaintiffs' communications.

Plaintiffs further fail to allege the "contents" of their communications were disclosed. "'[C]ontents' refers to the intended message conveyed by the communication"—not "record information regarding the characteristics of the message." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014).

The information Plaintiffs allege was disclosed (*e.g.*, URLs to the webpages visited on Gillette's website) constitutes "record" information, not contents. *See id.* at 1106–08. In *Hammerling v. Google LLC*, the court held that plaintiffs failed to allege that Google intercepted the "contents" of any communication where, in part, the alleged data collection only allowed Google to make "'educated guesses' about a user's traits and habits, much like [an] IP address." 615 F.Supp.3d 1069, 1093 (N.D. Cal. 2022) (granting motion to dismiss CIPA claim). So too here.

## V. PLAINTIFFS' INTRUSION UPON SECLUSION CLAIM FAILS.

Plaintiffs failed to allege either an intrusion or that any intrusion was highly offensive, both required elements of an intrusion upon seclusion invasion of privacy claim.

Plaintiffs do not dispute that they voluntarily provided the information at issue to Gillette. When someone voluntarily provides information there is no intrusion. *See Okash*, 2024 WL 1285779, at *7 & n.9 (collecting cases); *C.L.D. v. Wal-Mart Stores, Inc.*, 79 F.Supp.2d 1080, 1083 n.1 (D. Minn. 1999); *Lehman v. Zumbrota-Mazeppa Pub. Sch.*, No. A04-1226, 2005 WL 894756, at *4 (Minn. Ct. App. Apr. 19, 2005).

Instead, Plaintiffs ask the Court to expand the reach of intrusion upon seclusion claims to include such voluntary conduct. (Resp., 27–28.) The Court should reject the invitation. *See Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 673 (8th Cir. 2009) ("It is not the role of a federal court to expand state law in ways not foreshadowed by state precedent." (cleaned up)).

Plaintiffs rely on *Lake v. Wal-Mart Stores, Inc.*, 582 N.W.2d 231 (Minn. 1998), which does ***not*** hold that plaintiff adequately stated a claim. Instead, the lower courts dismissed plaintiffs' invasion of privacy claims solely because Minnesota had previously not recognized such claims. *Lake*, 582 N.W.2d at 233. The Minnesota Supreme Court reversed, recognizing these claims for the first time while refusing to consider the merits. *Id.* at 235. *Lake* does not discuss Plaintiffs' false pretenses argument.

While offensiveness is often a question of fact, "intrusion claims require 'a preliminary determination of offensiveness.'" *Said v. Clinic*, No. 20-927, 2021 WL 5371571, at *14 (D. Minn. Nov. 18, 2021) (quoting *Bass v. Anoka Cnty.*, 998 F.Supp.2d

813, 824 (D. Minn. 2014)), *aff'd*, 44 F.4th 1142 (8th Cir. 2022); *see also Kennedy v. City of Braham*, 67 F.Supp.3d 1020, 1035–37 (D. Minn. 2014) (granting motion to dismiss intrusion upon seclusion for failing to allege offensiveness, including where allegedly based upon medical information).

Plaintiffs do not argue that their own health information was not shared, nor do they dispute that any information allegedly shared about them was just browsing information. Plaintiffs cite no cases for the proposition that such information is highly offensive. Courts have granted motions to dismiss for failure to allege offensiveness in cases involving information more personal than browsing data. *See, e.g.*, *Kennedy*, 67 F.Supp.3d at 1036.

Finally, Plaintiffs' argument in support of this claim makes clear that their theories do not apply just to health care providers and health information or even to websites generally. Under their logic, there is an intrusion anytime someone uses information from another for a purpose other than one known or authorized. (*See* Resp., 29.) Under Plaintiffs' theory, sharing any website browsing information is highly offensive. The Court should reject Plaintiff's invitation to expand Minnesota law.

## VI. PLAINTIFFS' NEGLIGENCE CLAIM FAILS.

Plaintiffs' negligence claim should be dismissed because they fail to plausibly allege that Gillette owed Plaintiffs a duty, that Gillette breached any duty, or that Plaintiffs have been injured.

Because Plaintiffs are not patients, Gillette does not owe Plaintiffs a duty.

Nor have Plaintiffs sufficiently alleged that Gillette breached a duty. Plaintiffs argue that Gillette breached its alleged duty of care by disclosing a "health record" as that term

is defined in Minn. Stat. § 144.291, subd. 2(c). (Resp., 32.) Plaintiffs attempt to stretch the meaning of that term too far. Plaintiffs allege that Plaintiff Harris used Gillette's website to "research specialists, complete health assessments, and schedule appointments." (*Id.*) Plaintiffs allege that Plaintiff Braulick used the website to research information . . . and to schedule appointments." (*Id.* at 33.) In other words, Plaintiffs allege that they used Gillette's public website for "research," that they scheduled appointments for their children, and that Plaintiff Harris completed "health assessments"—without describing or otherwise specifying the information contained in such an assessment, let alone specifically alleging that such information was protected. The data associated with those activities as alleged does not plausibly fall within the definition of "health record." *See Furlow v. Madonna Summit of Byron*, No. A19-0987, 2020 WL 413356, at *2–3 (Minn. Ct. App. Jan. 27, 2020); *Rhoades v. Lourey*, No. A18-1120, 2019 WL 1006804, at *1–2 (Minn. Ct. App. Mar. 4, 2019).

Plaintiffs' reliance on *Group Health* is unavailing. In that case, the plaintiffs used the website to "discuss medical diagnoses," "receive lab results," and review "medical records" and "medical bills." *In re Grp. Health Plan Litig.*, No. 23-267, 2023 WL 8850243, at *2 (D. Minn. Dec. 21, 2023). Allegations of similar disclosures are notably absent from Plaintiffs' Complaint. Accordingly, even if Gillette owed Plaintiffs a duty, it was not breached, because Plaintiffs do not allege the unauthorized disclosure of a "health record."

Finally, Plaintiffs appear to advance two theories of damages—diminution in value of their children's "Personal Information" and loss of privacy. (*See* Resp., 33.) Both theories fail. First, because these categories of alleged harm were not suffered directly by

Plaintiffs, Plaintiffs' claim fails as a matter of law. Second, Plaintiffs have not sufficiently alleged damages for loss of privacy because, as discussed above, they have not sufficiently alleged a claim for invasion of privacy. Plaintiffs' claim should be dismissed.

## VII. PLAINTIFFS' BREACH OF IMPLIED CONTRACT CLAIM FAILS.

Like their other claims, Plaintiffs' claim for breach of implied contract based on Gillette's Legal Notices should be dismissed because the claim is premised on the alleged disclosure of "Personal Information" that does not belong to Plaintiffs. Further, the conduct of which Plaintiffs complain was authorized and disclosed by the Legal Notices and Plaintiffs have not suffered cognizable damages.

Plaintiffs contend that they "are considered the 'patients' of Gillette." (Resp., 35.) As discussed at length above, that is incorrect.

Plaintiffs also argue that Gillette agreed not to share "voluntarily provided personal identifiable information for any purpose other than its intended use," and that Plaintiffs suffered damages in the form of loss of the benefit of the bargain and diminution in value of Personal Information. (*Id.* at 34.)

These arguments run headlong into one of the central (and dispositive) issues with Plaintiffs' pleading—Plaintiffs fail to differentiate between their own personal information and their children's information. This is fatal to Plaintiffs' implied contract claim.

Plaintiffs' theory of breach of contract is based on a statement in the Legal Notices about "personal identifiable information." The only "personal identifiable information" identified in the Complaint is Plaintiffs' information: *i.e.*, "Facebook ID number, other persistent cookies, device ID, computer IP addresses, or other PII." (Compl. ¶ 60.)

Plaintiffs argue that Gillette breached the implied contract by allegedly misusing Plaintiffs' *own* information. Plaintiffs' theory of damages is that the value of their *children's* Personal Information was allegedly diminished. (*See, e.g.*, *id.* ¶ 131 (discussing specifically the value of "healthcare data").) The damages Plaintiffs allege have no relation to the breach they allege. For that reason, their claim should be dismissed.

## VIII. PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS.

Plaintiffs' unjust enrichment claim should be dismissed for several reasons, including lack of standing and failure to sufficiently allege an implied contract. (*See* Opening Br., 23–25.) The claim should also be dismissed because the central premise of the claim is contradicted by the Legal Notices on which Plaintiffs rely to support their claims in this case. "Plaintiffs allege that they were not informed that the Personal Information was being disclosed to third parties, and therefore never could have intended or agreed that any benefit Defendant provided to Plaintiffs was in exchange for that disclosure." (Resp., 37.) This is contradicted by the Legal Notices. The Legal Notices advised Plaintiffs that Gillette's site used cookies, pixels, and other analytics. (*See* Opening Br., 3–4.) Because Plaintiffs' allegations are contradicted by these terms, their claim should be dismissed.

## IX. PLAINTIFFS' MUDTPA CLAIM FAILS.

Plaintiffs' MUDTPA claim should be dismissed for many reasons, including Plaintiffs' failure to plausibly allege deceptive statements, their failure to allege a causal nexus, and their failure to sufficiently allege a likelihood of future harm. (*See* Opening Br.,

25–29.) Plaintiffs cannot cure the deficiencies in their pleading through their opposition brief.

In addition, Plaintiffs' claim, which seeks only injunctive relief, is moot because Gillette has disabled tracking technologies on its website.[2] *See Kurowski v. Rush Sys. for Health*, 683 F.Supp.3d 836, 847–48 (N.D. Ill. 2023) (dismissing analogous deceptive trade practices act claim where the health care defendant ceased transmissions to Google and Facebook). In response, Plaintiffs claim, without any support, that "Defendant can reenable the tracking technologies as easily as they were disabled." (Resp., 42–43.) The Court should not credit this baseless and conclusory assertion.

## CONCLUSION

The Court should grant Gillette's Motion to Dismiss.

Dated: August 22, 2024

*s/ Nicole M. Moen*
Nicole M. Moen (#0329435)
Geoffrey W.B. Koslig (#0402717)
**FREDRIKSON & BYRON, P.A.**
60 South Sixth Street, Suite 1500
Minneapolis, MN 55402-4400
Telephone: 612.492.7000
Facsimile: 612.492.7077
nmoen@fredlaw.com
gkoslig@fredlaw.com

***Attorneys for Defendant***
***Gillette Children's Specialty Healthcare***

[2] Plaintiffs complain that Gillette's motion included "no evidence" substantiating the disabling of tracking technologies. (Resp., 42.) Gillette's website is available to both Plaintiffs and the public for verification using the same methods described in Plaintiffs' Complaint. (*See* Opening Br., 28 n.7.)